Your Honor, may it please the Court, Diana Kahn on behalf of Appellant Michael Steven Levinson. The first issue I'd like to address is the constitutional claims issues. And there, as a threshold matter, I would say that the district court clearly erred in dismissing Mr. Levinson's constitutional law claims. The Court concluded that the district court clearly erred in dismissing Mr. Levinson's constitutional law claims. If you were in the wrong place on the FCC, and if they turned you down, then seek appeal here and not in the district court. In other words, you were in the wrong place in the district court. How do you get around the requirement that you first seek agency approval or disapproval? Your Honor, I would submit that the decision in Forbes at the Supreme Court dictates that this Petitioner did not need to seek relief first from the FCC. In this regard, I wanted to say that oral argument here perhaps is more advisable, because given the accelerated briefing here, not everything got completed, I would say, in the ideal way. So I want to point out to the Court that in Forbes, there are actually three Forbes decisions. The supplemental reply refers to Forbes I, which was decided by the Eighth Circuit. That subsequently was remanded, went back up on appeal to the Eighth Circuit. That's Forbes II, and it's 94, 96, and 98. And then ultimately, that was appealed to the Supreme Court, which became Forbes III, which is a 1998 decision. In Forbes III, you'll see that even though there the claims were almost identical to those asserted here by the candidate Forbes, that the Court, even though all statutory claims were dismissed, the Court nonetheless went on to examine and evaluate the constitutional law claims. The Court, the Supreme Court did not say to Mr. Forbes, hey, you should present those claims to the FCC first. Rather, it said, yes, the district court should open its doors to constitutional law claims. The distinction is that if there's a regulation that the FCC promulgates that is alleged to be unconstitutional, certainly then the FCC should pass upon its own regulations and the constitutionality of them. Here, the issue is not the statute. Indeed, in Forbes, the statute, all statutory claims were dismissed. Rather, the Court only examined whether there were First Amendment rights that existed independent of any statutory rights. And in Forbes, the Supreme Court so held, finding that at a minimum, Forbes had stated a cause of action for First Amendment relief. In that case, the Court ultimately concluded that there was no actual violation, but certainly he had stated a claim that withstood a motion to dismiss. And I think this is the crux of the matter, that a person, a candidate has First Amendment rights that exist without regard to any statutes. And that case involved the Arkansas Public Television. So it was clearly a State actor. Just exactly. But I don't know that we have a State actor here. We do, we do. And in this, I apologize to the Court, because the focus of the public State action was not very clear in the initial briefs. In this case, there are two public television stations, and indeed, that's why the Attorney General is representing the public stations in this case. So there are two public stations. Truly, Forbes is almost identical on its facts to Levinson. Because there is a public State actor, a different constitutional analysis does apply. Heightened constraints apply to public stations because they're deemed to be State actors. So the State cannot just decide who can come in and who can come out and make censorship decisions. Rather, a much heightened analysis applies to State actors. Well, if there's no State actor, then, I mean, you wouldn't have any First Amendment claim. How do you get a First Amendment claim if you have no governmental actor? There are two governmental actors here, I would submit. The first governmental actor is the public broadcast station, which is a State actor, because it is a So there's Iowa and there's somebody else? There's KUAT and KAET, which are both public broadcast educational TV stations in Arizona. So one is Channel 6, one is Channel 8. They are both publicly owned stations. And in that way, they are that's where the government actor presents itself. Okay. The second actor really is Congress. Wait a minute. You said they're publicly owned. These are public broadcast. State-owned. I'm sorry. They're owned by the State of Arizona? The public broadcast stations, my understanding, and counsel can correct me if I'm wrong, is that public broadcast stations, at least in Arizona and certainly in Arkansas, are State-owned entities, and that is what makes them State actors. And I think this is why the Arizona attorney general is representing PBS. Okay. The second actor, governmental actor here that raises the First Amendment claim is actually Congress. In 2000, Congress amended the reasonable access statutes, and the question before this Court is whether it did so in a way that is constitutional or not. And that's where the second government actor comes into play. Of course, you haven't sued the United States, or we'd have the attorney general here, right? Well, we do have the U.S. attorney general as well, and under He's here to say he wasn't properly sued, right? Right. He's here to say, let me uphold the statute here. It's constitutional. There's no problem here. So in other words But he wasn't properly served. I thought the United States is not a party, not properly served. That is the case, but under existing procedures, even this Court is obligated to give notice to the government that a statute is being asserted to be unconstitutional so that the government may defend the constitutionality of the FCC's rights to enforce the reasonable access statute as it was amended by Congress. But further, Your Honor, to your point about whether we have the jurisdiction or whether this should have been submitted, the constitutional law claim should have been submitted to the FCC, there is also a decision in the Federal Circuit 1995, Riggan, which is cited in the main brief that says particularly where an agency lacks the authority to act contrary to its statutory mandate, those claims should not be relegated to the FCC. Here, what we are what we would be asking is for the FCC to actually contravene its own statute and order those public broadcast stations to open their doors to this candidate. They cannot do so. Doesn't the FCC have the obligation to enforce the constitution? The FCC certainly has an obligation to enforce the constitution, but under this amendment, it absolutely cannot take the license away from a public station if it refuses access to a candidate. Pursuant to that 2000 amendment, the FCC cannot do so. It's just outside of its statutory mandate. Riggan suggests that in those circumstances, it's not appropriate to bring those claims to the FCC. And further, Forbes in the Supreme Court rejects the statutory claims and nonetheless goes on to adjudicate the constitutional law claims, and it certainly doesn't shut its doors and say first go to the FCC. The facts really are almost identical. But, of course, then you would lose on the merits of Forbes, because of Forbes. Absolutely. It would be futile. Well, no, no, no. Let me take that back. What would be futile is it would be futile to present the constitutional law claim to the FCC. I understand. I just put that to a new question. Maybe I shouldn't have, but that's what I did. The reason this case is different from Forbes is the following. In Forbes, the Court held that the government actor, which was the public TV station, was a nonpublic forum. It reached that determination based on the conclusion that the access to the public TV station wasn't simply unlimited. It wasn't like a public forum where anybody could get up and talk. Nor did the Court consider it to be what they call a limited public forum. A limited public forum is one where the government basically opens it up to a certain class of speakers, and within that class, it cannot discriminate. So, for example, all Republican candidates. Within that class, if all Republican candidates were – if that was the class, then they couldn't discriminate against a certain one without a compelling – strict scrutiny, compelling standard. The last – well, not the last class, but the third class is what they call a nonpublic forum. It's still a forum where speech is aired, but it's nonpublic because the government has actually selected the speaker, not a class of speakers, but the particular speaker that's invited. That's what the Supreme Court ruled in Forbes had occurred. Now, there's a strong dissent, a three-judge dissent led by O'Connor that suggests that really it should have been a designated or limited public forum, and I would certainly submit that I think that's the case. I think the reason this Court has an opportunity to review the Forbes outcome is because when Forbes was decided, the 2000 Amendment was not yet in place. So we're now at a time where reasonable access is no longer afforded to public TV stations, and so I would submit that this is a difference in the law that allows this Court to come back to the question of whether Forbes' public forum decision was correct. But in any case, the reason that the decision here, even if you follow Forbes in the Supreme Court, and that jurisprudence would not dictate dismissal here, is because in Forbes, the Court concluded that it was a non-public forum and, therefore, the TV station could eliminate Forbes only if it did so on a reasonable basis. So it's just kind of the lowest level test. It had to have a reasonable grounds to eliminate Forbes from this debate. Here, the public broadcast stations have stated on the record what their reason is for not including Mr. Levinson. It is not because of any of the reasons enunciated in Forbes that perhaps he doesn't have appreciable public support or maybe he's not a viable candidate or any of those reasons that were offered in Forbes. Rather, the very stated reason, and it's in the record, and I'll give you the ER site in a moment, is that they rely on the exemption for the 2000 law. What they say is we're not going to open the door to Mr. Levinson because we don't have to. Congress amended the statute in 2000 to say that public television stations no longer had to open their doors to public candidates. There is no reasonable access law that exists any longer for public stations. And so the reason we're going to exclude you, Mr. Levinson, is because we don't have to open our doors anymore. They didn't say the basis was we think you're not viable, we think you don't have good public support, we think that maybe you're just not a you're a fringe candidate or any of those reasons. Rather, they relied on this exemption. Well, that basis is not reasonable as a matter of law. And the reason that it's not reasonable is because independent of statutory obligations, public broadcast stations still have First Amendment obligations as State actors. And Forbes, the Supreme Court decision there, absolutely holds that that's the case. Even though all statutory obligations were dismissed, or I should say all statutory claims had been dismissed, the Court nonetheless said, Mr. Forbes, you have a First Amendment right. In this case, it wasn't violated because the reasons that they offered were reasonable. However, there's no question that you have a First Amendment right, even without any statutory rights. Here, what's happened is the public broadcast stations have mistakenly understood that this amendment means that they no longer have to open their doors to candidates. That is incorrect. They're leaping to the wrong conclusion. Even though they have no statutory obligation to open their doors under this amendment, they still have the First Amendment obligations. Kagan, I don't understand. I have a – I may be simple-minded, but your argument seems to imply that the amount of time available for candidates to appear on television before an election is unlimited. No. No, it couldn't be. It's still the case that under the First Amendment, there's reasonable limitations. The First Amendment couldn't open its doors to unlimited access. It is not a public forum where anybody can get in and speak however long they want. Rather, Forbes suggests you have to make a reasonable determination of how long the person can speak, but there has to be at least that determination. He has to be able to speak no matter what? No. Under Forbes, under the Supreme Court's jurisprudence, the station can make a reasonable judgment as to whether a candidate should be allowed to speak. Now, O'Connor's dissent, I think, really outlines why this is problematic. Effectively, what it means is the government, this is a State actor now, can say, okay, we're going to limit the class of speakers to Republicans. What was unreasonable here? What was unreasonable here is that the public station is denying his request not because of any reasonable reason like you're not viable or we need two people, we don't want to have ten people debating or things of that nature which could be reasonable. Rather, it's simply relied on, and the ER, the excerpts of record will show you the letter that they submitted to Levinson rejecting his claim. All they say is, we don't have to. Congress amended the law. We're exempt. And that's exactly what happened. What you're saying is you want them to meet the law as it was before the amendment. The amendment recognizes this as non-public forum and basically says, as long as you're really, what the law is now is, as long as you don't do viewpoint discrimination, you don't have to let them in. If you're going to do viewpoint discrimination, well, then you have a First Amendment problem. But if you're not doing viewpoints under the discrimination, the 2000 Amendment says you don't have to let anybody in. What I would say is a slight clarification to that. The statute, Congress cannot abridge First Amendment rights, right? So whether they had a statute in the first place or they amended the statute, they can't do so to get rid of the First Amendment. Non-public forum, right? Even in the non-public forum. That's what we have, a non-public forum and no viewpoint discrimination. Now, this is the question. And the 2000 Amendment. So how can you win? No, no. I would submit that I'm not explaining it then in a way that is clear. We do not know whether there was viewpoint discrimination or not. All we know, and this is a question where you have to accept the pleadings as given on a motion to dismiss, all we know is that the public station said this. We are going to reject you in reliance on this 2000 Amendment. So he made, then you get into a case where you have to have a plausible claim of viewpoint discrimination in your complaint. That was there? What all that's required under Forbes, I would submit, is that the reasonable the TV station has to have had a reasonable basis. But we're, okay. That's what they had to do under the law before it was amended. No. Forbes, the interesting part about Forbes is all statutory claims have been rejected. It still had a First Amendment obligation. So independent of any statute, after the 2000 Amendment, before the 2000 Amendment, always, First Amendment rights exist. Kennedy, Mr. Vestani was asking you if it does have a First Amendment obligation is to avoid viewpoint discrimination. Question, question, under Iqbal and under Twomley, where are your allegations that denial of Mr. Levinson was based on viewpoint discrimination? Can you answer that to me? The complaint states that the basis for refusing Mr. Levinson access. Can you read the page and line number? Yes. Sorry. ER-75 and ER-93 are included in the complaint, and those are the letters that the public broadcast stations sent to Mr. Levinson in which they denied his access claim. And they stated the reason, and the reason was they thought they could rely on this amendment, that they didn't have any more obligation. Is that the full and complete statement of viewpoint discrimination from the point of view of the appellant and plaintiff in this case? No. I would say that literally And give me anything more in the complaint, which says a plausible, under Iqbal and Twomley, statement of viewpoint discrimination as a proximate cause for the denial of his ability to speak. As a pro se, I would say the complaint must be liberally construed. If you read the complaint and liberally construed, there are some words that say what I've just asked. He explains what his campaign platform is going to do. I would say the complaint must be liberally construed, and there are some words that say I have been discriminated against by the public stations because of my viewpoint. In rebuttal, I'll have to come back to that, if I may. Do you want to save two minutes? I do want to save two minutes. Thank you. I still had just a few seconds. I don't know if I should continue. Why don't you save the 219? All right. And take a look to see if you can find it. It's an ER84 through ER91. Pardon me. I think I'm wrong. ER92. May it please the Court, Your Honor. I'm Michael Labate on behalf of the United States. The Federal Communications Act sets up a detailed scheme for administrative and judicial review of political broadcasting issues. But the Act leaves no role for district courts to play. What happens when a candidate believes that they have been denied access to broadcast networks to which they're entitled under the Act is that the candidate can call the FCC. In the vast majority of cases, in fact, nearly every instance when the FCC gets such an inquiry, which is several times a day at this time of the year, it's resolved without a complaint at all. The FCC works hard to mediate disputes. Counsel, do you disagree with your learned opponent that the Forbes case allows a cause of action to be brought in district court for violation of First Amendment? Yes, I do. I do. Tell me why. Yes. First of all, three points about that Forbes decision. On this jurisdictional point, the opinions in that case never addressed the question of whether the Communications Act deprives the district court of jurisdiction over the First Amendment claim. The district court resolved that on the merits. The Eighth Circuit, in its opinion, reversed on the merits. It went back down. It came back up. And then it went to the Supreme Court, which took the case as briefed to it. And as you pointed out, Judge Rustani, that was a case against Arkansas, not against the United States. And there is no indication in either any of the Eighth Circuit's opinions or in the Supreme Court's opinion that it considered the jurisdictional question. But isn't that required of ---- It is not, but the Supreme Court said in Steele Co. and in Arbaugh recently that this kind of drive-by jurisdictional holding is not precedent for the notion that there was jurisdiction to decide that in a later case that squarely presents the question. And that's what we have here. We have a challenge to the jurisdiction. I will note that this Court, in its Writers Guild of America case, found that the Communications Act required even First Amendment claims to be brought before the JCCC. And ---- My thought there was, does it make a difference if there is a plausible argument that the statute can be construed in such a way by the agency that it makes sense to go to the agency? Or is it just straight on its face challenge to the statute, you still have to go to the agency? We think you still have to go to the agency. And just take a step back and look at the statutory scheme. It's a channeling scheme directly to the court of appeals, Judge Bea, as you pointed out. We're not saying he can't bring his constitutional challenge. We're just saying he's done it the wrong way. There is no role for a district court to play under this statutory scheme. And plaintiff is trying to take an order that if he had exhausted would go directly to a court of appeals and interject to district court. The various exhaustion cases which they have cited in their brief are cases that would have ended up in district court eventually anyway. I'm not aware of, after exhaustion, I'm not aware of any of those cases in a channeling scheme like this where you're allowed to bypass the agency and go to district court just because you want to bring a constitutional claim. And Judge Schroeder, your opinion for this Court in Phones for All held that Section 405 of the Communications Act was a mandatory exhaustion requirement and it couldn't be excused for judicially created reasons like futility. So we think that that's clear that you have to go to the agency first. And I'll just point out another common sense reason. The district court doesn't have the power to order the relief that plaintiff is seeking here. Plaintiff asked for the licenses of ABC, NBC, CBS, Fox, and CNN to be revoked, and for a cease and desist order against the two public television stations. Under the Communications Act, only the FCC has the authority to grant that relief. And if the FCC had granted that relief, that order would be challengeable not in district court and, in fact, not even in this Court. That's a special category of order under 402B that can only be appealed to the D.C. Circuit. So the district court had no authority to enter the relief plaintiff is seeking. And as we pointed out in our brief, there was no cause of action to sue the stations directly. You are representing who? The United States. Aren't there – I'm just wondering why you're so adamant. What have the other circuits done with respect to the jurisdictional issue? The jurisdictional issue? I mean, we think that the law is consistent in the Supreme Court, in this circuit and the other circuits, that there is a mandatory exhaustion requirement. Mr. Levinson has been around. Has he not? He has. What did the other circuits do with his case with respect to the jurisdictional argument that he had to go to the FCC? Right. So there are three parallel cases, in essence, that proceeded at the same time. This case, a First Circuit case, and an Eleventh Circuit case. The district courts in all of the cases dismissed the complaints at the outset for either being frivolous, for failure to exhaust, for no cause of action. All of those reasons we submit are correct. So there were three appeals filed. The First Circuit has submitted the case to a panel that has not yet decided it. The Eleventh Circuit dismissed it for failure to prosecute, and he moved to reinstate, which they denied. So neither of those circuits has yet reached a ruling. I'm not aware of any other circuit cases brought by Mr. Levinson. I'm not – I'm trying to be obscure. I'm just wondering why you're so anxious to have him go back to go to the FCC. Sure. When the FCC is going to deny it, then he'll wind up. But that's – In a court. I understand why you're not simply saying this is frivolous. Right. We are saying it's frivolous, but this is the scheme Congress has set up, and we think there's an important jurisdictional point to be made here. Congress wanted to channel all of these – all claims under the Communications Act to the FCC so it can exercise its expertise, and then the reviewable directly in court of appeals. The district courts have one role to play under the Communications Act, and that is to conduct trials de novo in forfeiture actions. Otherwise, everything is channeled to the court of appeals. What we're talking about is a constitutional – Right. Quasi-constitutional right. Right. Not – because that's what I understand your adversary has said, and that the FCC wouldn't be able to decide it in any event. Well, I just – So the FCC – If you were just – while we're spending a lot of time on this, I'd just like you to sort of cut through and tell us – tell me at least why you think that the whole thing is without any merit. I will gladly do that. Notwithstanding the fact we don't think the Court should reach the merits. If it does, first of all, I think the reliance on Forbes that plaintiff has pressed this morning is just incorrect for several reasons. The Supreme Court's opinion in Forbes makes clear that the normal rule under broadcasting principles is that broadcasting is no form at all. There is no First Amendment right. The Supreme Court said that in Forbes, that the First Amendment of its own force does not compel public broadcasters to allow third parties access to their programming. The principles about the closed public forum in Forbes were about debates. Justice Kennedy's opinion for the Court says there is no forum generally in broadcasting. However, debates are sui generis. In a debate sponsored by a public broadcaster, which is not what we have in this case, the government is sponsoring speech, it's opening up this forum, it's inviting candidates to come and present their views, and therefore we have this one limited exception where it's a nonpublic forum that we're going to analyze it. We don't have that here. And Forbes reaffirms the notion that the First Amendment generally does not impose the sort of forum analysis on broadcasting decisions. Kennedy, is it your position that Forbes dealt with the merits of Forbes' claim that there is jurisdiction in a case where it's framed, and not even sub silencio considered jurisdiction? Yes, that is our position, that if you read the Supreme Court's opinion, you know, the Court took it as brief, that there was this First Amendment question that had been decided by all the courts along the way, and it never reconsidered any jurisdictional questions. And as I pointed out, Arbaugh and Steele Co. make clear that you can't have that. That is not precedent for the idea that there is jurisdiction in a case where it's  And the Court did reverse, expressly reverse the holding of the Eighth Circuit on Bollock-Forbes' case that was cited in the supplemental reply brief that the plaintiff filed in this case. And I also just want to address one last point. Plaintiff's brief makes the suggestion that it wouldn't have been possible to get this kind of issue squarely framed up in any court of appeals in time for the election, and it cites the example of a 1992 petition that he filed. I think that's an inapt example for many reasons. In that case, the plaintiff did get an answer from the FCC before the primary election that was at issue. He waited a month after the election to file a petition for review to the full FCC, and the FCC decided it in due course. But there was no exigency of a coming election. On the contrary, in cases where there is a coming election, the FCC, both at the staff level and at the commission level, has demonstrated it can and will act quickly. In fact, often the staff level will respond often on the same day or a few days later with an initial ruling, and the commission has shown in cases in the D.C. circuit there was Johnson v. FCC, a case called Hernstadt v. FCC, and another case called Kennedy v. FCC, where the full commission acted on a petition for review the next day in one case, in four days in one of those cases, and within 30 days in another  case. And it shows that when there is a pressing matter of a coming election, that the agency will act quickly, allowing the petitioner to get effective relief by going straight to the court of appeals. In fact, it may be faster than seeking in the district court with its busy docket in the first instance. Thank you, Your Honor. We have ten minutes for Kelly McCullough, a state employee in Arizona, right? May it please the court, David Weinsweig, on behalf of Amiki Curie, Kelly McCullough, and Jack Gibson. Your Honors, I don't want to regurgitate the briefing. Just tell us who your clients are again, not their names. Certainly. My clients were two of the nine defendants named in the District of Arizona lawsuit, none of whom were served, and none of which appeared or defended. So my clients, Mr. Levinson would point to, even though he named them individually, as the PBS stations located in Phoenix and Tucson. Are they the managers of the stations? Correct. And we appear as Amiki Curie here because, one, we were invited in the order issued by the motions panel. And understanding that if we didn't, because no one had been served, CNN, NBC, there was unlikely to be anyone here. And we might have something to say that is helpful. But going to the ‑‑ I just want to, if I can, raise two quick points. The first is that Mr. Levinson seeks relief under two discrete statutes. He calls one of his claims, the Section 312 claim, a constitutional claim because he's challenging the constitutionality of it. But he also has his 315 claim for equal opportunities. Now, they are separate, separate causes of action, but both drive to the same form of relief, which is the form of relief that Mr. Levinson seeks here. Which is, what relief does he seek besides knocking out the licenses of your two parties? Well, if you look at his response to the Ninth Circuit in his amicus brief where the Ninth Circuit says, well, what did you seek in the district court? His answer is unambiguous. He says he wants airtime to deliver his perspective. He wants two hours of prime time to explain what he thinks and why he should be the president. Now, this court in Montana ‑‑ What was the basis of your client's refusal of such a request? Well, if you look at the letters as set forth in the E.R., the letter from Mr. Gibson in Tucson says we ‑‑ well, it raises both 315 and 312. The 315 argument, it explains, is not well taken because, one, there was no candidate debate in Oregon scheduled at that time. And, secondly, it would be exempt from the equal opportunities doctrine under the statute. And then, finally, with regard to reasonable access, that KUAT is exempt under 312A7. But, Your Honor, again, this is a case that should get no further than unremarkable, uncontested exhaustion principles, the lack of a cause of action, private or otherwise, and the failure to pursue any administrative cause of action. And if I can go back to the point I was making, so Mr. Levinson has two discrete, I guess, avenues, but he wants one form of relief, and that is he wants to get on TV. Now, there is no dispute that the statutory claim, 315, would require administrative exhaustion. We all agree. I would think Levinson is going to try to get around it with some futility exception. But the bottom line is there's a 315 argument raised here, statutory, no constitutional claim, at the very least under this Court's decision in Montana Chapter, you can't In fact, a complaint that raises both an administrative claim that would require exhaustion here, 315, just like Young, which was a different administrative agency, then the presence of the constitutional question should be especially concerning to this Court and should be almost a red flag that we should require, at the very least, this claimant to pursue their administrative remedies. Now, Mr. Levinson hasn't told us so far in any briefing, maybe they will on rebuttal, why winning under 312 isn't different than winning under 315. Really, all he could say is, well, I want to pursue both because I really want to win. But that's not what should drive this Court. Principles of judicial efficiency, respect for administrative institutions, would all recognize that Mr. Levinson, at the very least, should have to pursue that 315 claim, statutory, no constitutional issue, before he burdens already overburdened district courts. Of course, he should have filed in the FCC and then come here, but he did that. Secondly, if I can talk now about the district court said he has two claims, one is statutory, if he wins on the statutory, it moots the constitutional, this is efficient, that's the way you do it. Correct. Okay. And precisely, much more eloquently and succinctly stated, if I can say now, move real quickly to the statutory claim, which is what I think Levinson would say here is that, well, my statutory claim is, is I didn't have to go, he says, I didn't have to go to the FCC because it would have been futile. And then in our – if you look at the – my client's brief, it explains that Mr. – well, it argues that Mr. Levinson can't take advantage of extreme time emergencies of his own creation, meaning he filed a lawsuit against various defendants and then he was dismissed a month later by District Judge Wake, but at no time did he ever go to the FCC, not when he filed the lawsuit, not when it was dismissed by Judge Wake, yet now, after all of that time has elapsed, and we are talking about a time emergency, he says, well, we have this time emergency, we have an election right around the corner. Well, how can he benefit from sitting by and creating a time emergency that wouldn't have been there maybe if he had filed or pursued his remedies? What is the factual basis, if any, or legal basis for the claim of futility? I don't think there is one, other than lawsuits. I heard counsel say that the FCC's own regulations prohibit giving the relief which Mr. Levinson seeks, and therefore, that is evidence of futility. Again, Your Honor, that's the 312 claim. That's the claim for effectively reasonable access that says there's no precondition of inviting someone on your station. It's come on, you can have reasonable access to address our viewers. That is very different from the 315 claim. The 315 claim doesn't have any – there's no enabling legislation issue, and there's no dispute that Mr. Levinson could get what he wants, which is his mug on TV, with 315 and wouldn't have to go under 312. 312 is only tossed into this case to avoid the unavoidable administrative exhaustion defects. So what Mr. Levinson says is that under 312, there is an express exemption that Congress included that says public television stations, you're off the hook. So why would I have to go there to the FCC and press this 312 claim if the statute itself excludes or exempts public stations? What I'm saying is, what about 315? There is no such exemption in 315. Now, if I can raise one last point. On – on – in their reply, in Mr. Levinson's reply to – well, I see I'm over. Thank you very much. All right. You have a couple minutes for rebuttal. First, in response to your question regarding the complaint and whether there's any viewpoint discrimination stated there, I would point the Court to ER 33, where Mr. Levinson says that the PBS station, the public station, arbitrarily rejected his request unjustifiably and that there was discrimination against a political candidate, and he uses the word discrimination. But all those are conclusory – Right. But for well-plaid – Conclusory adjectives, aren't they? Right. Now, isn't that exactly what Iqbal and Twomley said was not sufficient? You have to allege some facts. Just for instance, that these two stations were in the clutches of members of the Republican Central Committee, and they disliked what Mr. Levinson had to say. And therefore, because what he had to say was contrary to what the Republican Central Committee wanted to say, they imposed their views and – and refused his viewpoint. Are there any facts besides the adjectival, conclusory allegations of the complaint which show viewpoint discrimination? In response to your question, no. What I would only submit is that in Forbes, the holding doesn't state that you have to establish that there's viewpoint discrimination. Well, does – does Forbes even deal – I was reading Forbes a minute ago. Does Forbes use the word jurisdictional question, or does it discuss jurisdiction at all? Does it discuss exhaustion at the – at the FCC level? Does it exhaust the first judicial venue being the circuit court? Is any of that in Forbes? What I would say in Forbes is it was in the same context as this one in that all statutory claims had been dismissed for failure to exhaust administrative remedies. The constitutional law claims were held to be independent of any statutory rights. Well – But no. But the answer is no, thank you. Right. But, you know, I do think there's a couple inaccuracies here. One is the idea that the FCC could grant his relief. The difference between 312 and 315 is not just, hey, he'll be able to get airtime if he's granted equal access through 315, which public TV stations still have obligations under. The difference is, with a debate, the FCC has determined that debates do not trigger equal opportunities obligations, so he wouldn't have a right to an equal opportunity claim under the FCC absent his First Amendment rights. So, in other words – Can't FCC change its mind? No. Under the statute, they no longer – unless – they can't amend Congress. Congress has amended the law. No, but you just said FCC has decided. If you tell me FCC has decided, then I start thinking FCC's decided, FCC can decide something else. Well, what I would say is that's true. The FCC could decide that debates trigger equal access opportunities. However, under – what the FCC could not decide is that there is a reasonable access requirement. And the difference between a reasonable access requirement is you don't have to open the door at all. So, Mr. Levinson is saying, hey, public broadcast station, let me in, even though you've not let in a single other candidate. That, the FCC cannot give him that relief. And in that sense, his claims could not be mooted by going to the FCC. The other thing I would correct here is that counsel, with all due respect, suggests Forbes I was overruled. That is not the case. If – your law clerks will show you there's no red flag. The reason is Forbes I only held this. And at first, I was a little alarmed myself. But then I read it closely, and I said, no, no, Forbes I's still good law. This is what it holds. There is a constitutional right, a First Amendment right to access broadcast stations. That's what Forbes held in Forbes I, the Eighth Circuit. It then said, let's see whether there was a violation. Is it – what kind of public forum was it? Go back, we'll remand to the district court for those determinations. In the Supreme Court decision, what the Supreme Court overruled was Forbes II. Forbes II held that the forum was a limited public forum. That's the basis of the reversal. So Forbes I's still good law. In the supplemental reply brief, that is still the case that that's good law. And the reason that's very relevant here is the facts of these cases couldn't be more close. What that suggests is, at a minimum, he states a viable cause of action under the First Amendment. At most, I would say he would be remanded to the district court for a determination of fact as to what was the nature of the forum, was it public, non-public, did they have viewpoint discrimination, or was the basis otherwise. And the only thing I would say is for what I would ask this Court to do is say, okay, if there's questions of fact, of course, they should be remanded. Are there questions of fact here? What I would say actually is the public stations have made it very clear what they based their decision on. It wasn't based on a reasonable ground. It was based on their erroneous belief that they are exempted from all requirements under the amendment. That is not a reasonable basis. They need to have one, and they didn't offer it. So I would suggest you don't even need to go. Kennedy, way over time, but we thank you. We understand that you're pro bono and you've given a very good presentation. Thank you for all your presentations. Very much appreciated. Thank you. And we will mark this as submitted.
judges: Restani, Schroeder, Bea